**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:07-CV-00184-R**

**GLOBAL GEAR & MACHINE CO., INC.**                                                      **PLAINTIFF/**
                                                                                                     **INTERVENING DEFENDANT**

**v.**

**CAPITOL INDEMNITY CORP.**                                                      **INTERVENING PLAINTIFF**

**v.**

**WESTERN RIVERS BOAT MANAGEMENT, INC.,**
**M/V COWBOY CARL,** *in rem*,
**M/V WESTERN,** *in rem*,
**M/V EASTERN,** *in rem*,
**M/V CAPT. JOHNNY COE,** *in rem*                                 **DEFENDANTS/**
                                                                                              **INTERVENING DEFENDANTS**

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Intervening Plaintiff Capitol Indemnity Corporation's Motion for Summary Judgment (DN 40). Plaintiff/Intervening Defendant Global Gear & Machine Co., Inc., has responded (DN 43), and Capitol Indemnity Corporation has replied (DN 45). This motion is now ripe for adjudication. For the reasons that follow, Capitol Indemnity Corporation's Motion is GRANTED.

**BACKGROUND**

This matter was initiated when Global Gear & Machine Co., Inc. ("Global Gear") filed a Complaint against Western Rivers Boat Management, Inc. ("Western Rivers") on November 9, 2007. Global Gear alleged Western Rivers failed to pay it for authorized maintenance and repair work on the M/V Cowboy Carl, M/V Western and M/V Eastern. Western Rivers asserted a Counterclaim against Global Gear, alleging that Global Gear's repair services on the gear boxes

of four vessels, the three vessels upon which Global Gear seeks payment, as well as the M/V Captain Johnny Coe, was not done in accordance with their contractual terms, was defective and was not done in a workmanlike manner.

Subsequently, Global Gear filed a Chapter 11 Bankruptcy proceeding, and this litigation was stayed. On January 22, 2009, the stay was modified by the Bankruptcy Court, allowing Western Rivers to pursue its Counterclaim, but only to the extent of any insurance proceeds available to satisfy the Counterclaim. Eight Counts remain in Western River's Counterclaim: Count I (Breach of Contracts), Count II (Breach of Express Warranties), Count III (Breach of Implied Warranties), Count IV (Fraud), Count V (Negligent Representations), Count VI (Intentional Damage to Property), Count XIII (Conversion) and Count XIV (Damage to Reputation and Goodwill).

Intervening Plaintiff Capitol Indemnity Corporation ("Capitol") argues in the present motion that it is entitled to judgment and a declaration of rights that neither a defense nor indemnification is owed under the commercial general liability ("CGL") policy and commercial umbrella policy issued to Global Gear arising from the Counterclaim filed by Western Rivers.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

"Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003). "'[A]n insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy.'" *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 79 (Ky. 2010) (quoting *Aetna Cas. & Surety Co. v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005)). This "duty to defend is broader than the duty to indemnify." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W. 2d 273, 280 (Ky. 1991).

Here, no liability for "property damage" is owed under the Capitol policy unless the

3

damage resulted from an "occurrence." Property damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." An occurrence is defined as an "accident."

Both parties focus on the issue of whether Global Gear's alleged faulty workmanship can constitute an occurrence. During briefing, the Supreme Court of Kentucky issued *Cincinnati Insurance Company v. Motorists Mutual Insurance Company*, 306 S.W.3d 69, 79-80 (Ky. 2010). The court held that "'a claim for faulty workmanship, in and of itself, is not an "occurrence" under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident.'" *Cincinnati Insurance*, 306 S.W.3d at 79-80 (quoting 9A *Couch on Insurance Third Edition* § 129:4 (2009)). The court explained that "[i]nherent in the plain meaning of 'accident' is the doctrine of fortuity," which consists of two central aspects: intent and control. *Id.* at 74. To be fortuitous, harm must be unintentional and also must be caused by a chance event beyond the control of the insured. *Id.* at 74, 76.

Global Gear does not appear to dispute that any damage caused to the gear boxes as a result of its faulty workmanship would not be covered by Capitol's policy. Instead, Global Gear asserts that Western Rivers alleges that Global Gear's work caused damage to other portions of the vessels. These claims, Global Gear argues, would fall within the meaning of "occurrence" under the policy.

In the final footnote of the *Cincinnati Insurance* opinion, the Supreme Court of Kentucky acknowledged that "[i]t appears as if a general rule exists whereby a CGL policy would apply if the faulty workmanship caused bodily injury or property damage to something other than the insured's allegedly faulty work product." *Id.* at 80, n.45 (citing *Couch*, *supra*, § 129:4). The

4

court did not decide whether to adopt this general rule because the facts of the case did not present a claim that would fall within it. *Id.*

Because the Supreme Court of Kentucky has not addressed whether a CGL policy would apply if faulty workmanship caused property damage to something other than the insured's allegedly faulty work product, the Court must anticipate how it would rule. *See, e.g.*, *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Although Kentucky courts have not addressed this issue, the Court finds the answer a logical extension of the reasoning of *Cincinnati Insurance*. In that case, the Kentucky Supreme Court expounded on the issue of control. 306 S.W. 3d at 76. The court stated that an accident is "'an event that takes place without one's foresight or expectation'" or "'something that does not result from a plan, design, or . . . intent on the part of the insured.'" *Id.* (citations omitted). The court instructed others to "bear in mind that a fortuitous event is one that is 'beyond the power of any human being to bring . . . to pass, [or is] . . . within the control of third persons.'" *Id.* (citation omitted, alterations in original).

In *Cincinnati Insurance*, homeowners had brought suit against their homebuilder for faulty construction of their home. The court found that because the homebuilder had control over the construction of the home, either directly or indirectly through the subcontractors it chose, the allegedly substandard construction could not be "a fortuitous, truly accidental, event." *Id.* Thus, conversely, harm to property other than the insured's allegedly faulty work product would not be within the control of the insured; it would be a fortuitous, accidental "occurrence" covered by the CGL policy. *See Couch*, *supra*, § 129:4 ("[W]hat does constitute an occurrence is an accident caused by or resulting from faulty workmanship, including damage to any property other than the work product and damage to the work product other than the defective

5

workmanship.").

Capitol argues that Global Gear's position, that damage to other portions of the vessels not worked on is covered by the policy, is not supported by Kentucky law. In *Cincinnati Insurance*, the court held that "claims of faulty workmanship, standing alone, are not "occurrences" under CGL policies." 306 S.W.3d at 73. Capitol interprets the phrase "standing alone" to mean that no other or third-party property was damaged, and reasons that the vessels are not "other property" that would be covered under the policy. As an example, Capitol points to *Cincinnati Insurance*, wherein the homebuilder's work product was the entire home, not merely parts of the defective home. *Id.* at 76.

First, to clarify, the Court interprets the phrase "standing alone" to mean a claim of faulty workmanship in and of itself, as opposed to "an accident caused by or resulting from faulty workmanship." *Couch*, *supra*, § 129:4. This would include "damage to any property other than the work product and damage to the work product other than the defective workmanship." *Id.*

Second, to be covered, the damage only has to be done to property other than the work product. In *Cincinnati Insurance*, the work product was the entire home because that is what the homebuilder was in control of and contracted to build. Here, the work product is the parts of the vessels Western Rivers contracted with Global Gear to repair, not the entire vessel. Global Gear is not analogous to a homebuilder or general contractor. Global Gear was only in control of the parts of the vessels it was hired to repair, *i.e.*, the gear boxes. Thus, damage to other parts of the vessels as a result of Global Gear's faulty workmanship would be an "occurrence" covered by the policy. *See Acuity v. Burd & Smith Constr., Inc.*, 721 N.W.2d 33, 39-40 (N.D. 2006) (where work product was roof, damage to interior of apartment building constituted an occurrence);

6

*Auto-Owners Ins. Co. v. Home Pride Co.*, 684 N.W.2d 571, 578-79 (Neb. 2004) (where contractors agreed to install shingles on roof, damage to roof structures and buildings was an occurrence); *High Country Assocs. v. N.H. Ins. Co.*, 648 A.2d 474, 477 (N.H. 1994) (damage to buildings caused by exposure to water seepage that resulted from negligent construction methods was an occurrence).

Global Gear has submitted an affidavit of its shop foreman, Tracey Gaines, who states that Western Rivers asserts that parts of its boats that Global Gear did not work on, including other shafts, were damaged as a result of Global Gear's alleged faulty workmanship. The Court finds that at this stage of the proceedings, before the completion of discovery, this statement is enough evidence that other parts of the vessels were damaged.

This finding, however, does not end the Court's inquiry. While damages due to faulty workmanship to parts of the vessels other than Global Gear's work product are covered under the policy, the Court must examine Western Rivers's Counterclaim to determine whether the allegations require Capitol to provide a defense or indemnification to Global Gear. *See Westfield*, 336 F.3d at 507.

    *a.*    *Intentional Acts*

If harm is caused intentionally by the insured, it is not fortuitous, and therefore would not be covered under the CGL policy. *Cincinnati Insurance*, 306 S.W.3d at 74. Also, the policy explicitly does not cover "'property damage' expected or intended from the standpoint of the insured." Count IV, Fraud, Count VI, Intentional Damage to Property, and Count XIII, Conversion, allege Global Gear acted intentionally. Thus, Capitol does not owe a defense or indemnification with respect to Counts IV, VI and XIII.

7

*b.     Breach of Contract*

Capitol submits that there is no coverage under a liability policy for breach of contract claims and those claims flowing from the contractual breaches because contractual claims do not meet the policy definition of an "occurrence" and/or that specific policy exclusions bar any such coverage. The Kentucky Supreme Court has not addressed whether a breach of contract claim can constitute an "occurrence," but the Court of Appeals of Kentucky has. *See Ky. Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368 (Ky. 2008). The Court views this decision as persuasive in the absence of evidence that the Kentucky Supreme Court would decide the issue differently. *See In re Dow Corning Co.*, 419 F.3d at 549.

In *Blevins*, the Court of Appeals of Kentucky adopted the Sixth Circuit's holding that "'a breach of contract claim cannot constitute an "occurrence" under liability policies triggered by an accident or occurrence.'" 268 S.W.3d at 374 (quoting *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001)). This holding comports with the majority of jurisdictions which have held that breach of contract is not an occurrence:

> In essence, this principle stems from the fact that commercial general liability insurance policies are intended to provide coverage only for events which are fortuitous, unforeseeable events, and not for the foreseeable results of an insured's deliberate conduct, which would include a claim for breach of contract. A commercial general liability policy is designed and intended to provide coverage to the insured for tort liability for physical injury to the person or property of others. A commercial general liability policy is not intended to provide coverage for the insured's contractual liability which merely causes economic losses.

*Couch*, *supra*, 129:4 (citations omitted) (cited by *Cincinnati Insurance*, 306 S.W.3d at 80 n.45).

As the Kentucky Supreme Court explained in *Cincinnati Insurance*, "an accident is 'an event that takes place without one's foresight or expectation.'" 306 S.W.3d at 76 (citation

8

omitted). If Global Gear breached a contractual duty, then facing a lawsuit for that breach is a reasonably foreseeable result, not an "occurrence" covered by the policy. *See Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 948 (9th Cir. 2004). Similarly, Global Gear should expect to be liable for a breach of an express or implied warranty flowing from the contract. *See Blevins*, 268 S.W.3d at 375 n.7. Moreover, the Capitol insurance policy does not apply to "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Thus, Capitol does not owe a defense or indemnification with respect to Count I, Breach of Contracts, Count II, Breach of Express Warranties, or Count III, Breach of Implied Warranties.

    *c.    Negligent Representations*

The Court also concludes that Capitol does not owe a defense or indemnification with respect to Count V, Negligent Representations, because the Court finds that Western Rivers fails to state a claim for negligent representation upon which relief can be granted. In Count V, Western Rivers alleges that Global Gear made the following representations:

> (a)    GLOBAL would use only brass bearings in the repair and service of the gear boxes;
> (b)    GLOBAL had employees with sufficient qualifications, skills, knowledge and abilities to repair the gear boxes in a workmanlike manner;
> (c)    All materials and workmanship provided by GLOBAL would be warranted for a period of one (1) year after the completion of the work by GLOBAL;
> (d)    GLOBAL agreed to repair and/or replace any defective part of faulty workmanship at its own expense during the warranty period; and
> (e)    GLOBAL agreed to make all necessary repairs and alignments of gears and shafts in accordance with the manufacturer's specifications.

Western Rivers further alleges that Global Gear made these representations to induce Western Rivers to enter into repair contracts with Global Gear, and that in reliance on the representations,

9

Western Rivers did in fact enter into various repair contracts with Global Gear. The Court finds that Western Rivers fails to state a claim for negligent representation upon which relief can be granted because these representations do not exist independent of the contracts entered into between Western Rivers and Global Gear. *See Presnell Const. Managers v. EH Const., LLC*, 134 S.W.3d 575, 582-83 (Ky. 2004).

The Court's conclusion is supported by the Supreme Court of Kentucky's decision in *Presnell Construction Managers v. EH Construction, LLC*, 134 S.W.3d 575 (Ky. 2004). In *Presnell*, an owner of a commercial building contracted with a construction management company to renovate the building, and with a contractor to provide general trades work for the renovation project. 134 S.W.3d at 576. The contractor later filed suit against the construction management company. *Id.* at 577-78. The contractor brought claims premised upon the management company's alleged negligent misrepresentation and negligent supervision of the project. *Id.* The court adopted the Restatement (Second) Torts § 522's standard for negligent misrepresentation and found that even though no privity existed between the contractor and construction management company, the construction management company owed a duty not to supply false information to the contractor. *Id.* at 582. Thus, the contractor's allegation that the company "supplied faulty information and guidance" was sufficient to state a claim for relief. *Id.* The contractor's claim of negligent supervision of the project, however, did not articulate a claim independent of the company's contractual duties, and was properly dismissed. *Id.* at 582-83.

Here, similarly, Western Rivers does not allege a claim of negligent representation independent of Global Gear's contractual duties. *See also Barton Brands, LTD. v. O'Brien &*

*Gere, Inc.*, 550 F. Supp. 2d 681, 686 (W.D. Ky. 2008) (explaining that fraudulent inducement is "'essentially the defendant failing to meet the plaintiff's commercial expectations' . . . which would be inseparable from the essence of the parties' agreement") (quoting *Ohio Cas. Ins. Co. v. Vermeer Mfg. Co.*, 298 F. Supp. 2d 575, 578 (W.D. Ky. 2004)). This finding is not surprising, because the tort of negligent representation requires one to supply "false information for the guidance of others in their business transactions." Restatement (Second) Torts § 522. This "requirement recognizes that the tort predominantly applies to situations where the information supplied harmed the plaintiff in its relations with third parties" not "when a defendant directly provides information to a plaintiff in the course of a transaction between the two parties." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 126 (Iowa 2001); *see also* Restatement (Second) Torts § 522, cmt. d ("The defendant's pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied."). The Court additionally notes that would not be logical to conclude that a breach of contract claim cannot constitute an occurrence, but that representations which induced a party to enter into that contract can.

Furthermore, even if Western Rivers could assert a claim of negligent representation independent of its contracts with Global Gear, the Court doubts whether such an act could be considered an accident. Kentucky courts have not addressed whether negligent representations constitute an "occurrence," but they have adopted the standard for negligent misrepresentation set forth in the Restatement (Second) of Torts § 522. *Presnell*, 134 S.W.3d at 582. Section 552 outlines the elements of negligent misrepresentation as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false

11

> information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> > (b) through reliance upon it *in a transaction that he intends the information to influence or knows that the recipient so intends* or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552. Even though the supplier of information does not intend the information to be false, he does intend for the information to influence the recipient or a third party. Here, Western Rivers alleges that Global made representations in order to induce Western Rivers to enter into various repair contracts. Applying the reasoning of *Cincinnati Insurance*, the Court does not see how damages caused by representations could be "fortuitous" if the supplier intended for the information to influence the person later harmed by the information. 306 S.W.3d at 76. But because the Court *sua sponte* dismisses Western Rivers's negligent representation claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this issue will be left for a future court to address in full.

### d. Damage to Reputation and Goodwill

Finally, the Court finds that Capitol does not owe a defense or indemnification with respect to Western Rivers's allegation of Damage to Reputation and Goodwill, Count XIV, because it does not assert any "property damage." In Count XIV, Western Rivers claims that its

"reputation and goodwill have been adversely affected" as a result of Global Gear's actions. Capitol's policy applies to "property damage," defined as "[p]hysical injury to tangible property." Western Rivers's reputation and goodwill are not tangible property. *See Black's Law Dictionary* (8th ed. 2004) (defining tangible property as "[p]roperty that has physical form and characteristics.")

## CONCLUSION

In sum, Capitol is not required to indemnify or provide a defense to Global Gear because the remaining Counts in the Counterclaim either (1) allege intentional conduct which would not constitute an occurrence; (2) allege a contractual claim which would not constitute an occurrence; (3) fail as a matter of law; or (4) do not allege physical injury to tangible property. For the foregoing reasons, IT IS HEREBY ORDERED that Capitol's Motion for Summary Judgment is GRANTED.